[Cite as *State v. Sampson*, 2015-Ohio-129.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25869 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-2552 |
| v. | : | |
| | : | |
| SCOTT A. SAMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 16th day of January, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by TIFFANY C. ALLEN, Atty. Reg. #0089369, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. #0084707, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

**{¶ 1}** Defendant-appellant Scott A. Sampson appeals from his conviction and sentence, following a guilty plea, for Identity Theft, in violation of R.C. 2913.49(B)(1), a felony of the third degree. Sampson contends that the trial court erred by imposing a sentence in excess of the sentence that was agreed upon at the time he tendered his plea, and that his trial counsel was ineffective for having advised him that he need not concern himself with his obligation to appear for sentencing, in view of a continuance of that hearing having been sought.

**{¶ 2}** We conclude that the trial court did not err in imposing a sentence in excess of the sentence agreed upon when Sampson tendered his plea, because the trial court advised Sampson that the agreed sentence, but not the plea, was conditioned upon Sampson's appearing when required for the sentencing hearing, which he failed to do. We further conclude that the record fails to demonstrate ineffective assistance of counsel. Accordingly, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

**{¶ 3}** Sampson was charged by indictment with Identity Theft, in violation of R.C. 2913.49(B)(1), a felony of the third degree, the value of the credit, property, services, debt, or other legal obligation involved being at least $7,500, but less than $150,000. After his motion to suppress was overruled, Sampson pled guilty to the charge, subject to an agreed sentence of eighteen months in prison.

**{¶ 4}** In taking Sampson's plea, the trial court made it clear to him that the plea would be unconditional, but the agreement as to the sentence would be conditional:

THE COURT: The possible sentence prison terms could be 9, 12, 18, 24, 30 or 36 months. I've agreed to sentence you to 18 months. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And that's conditioned on you not breaking the law between now and when you get sentenced, showing up for your appointments, and being here when you're supposed to be here. Okay?

THE DEFENDANT: Yes.

THE COURT: Do all that, that's what you get, but if you break the law or abscond or don't show up or something, then you [sic] the plea would stay, and I could give you more time if I so chose, based upon the report. Do you understand that?

THE DEFENDANT: Yes.

{¶ 5} The trial court set June 5, 2013, for sentencing. The sentencing date was subsequentl continued until July 10, 2013. Sampson did not appear at the appointed time on that date. He later turned himsel in after a warrant had been issued for his arrest. He appeared for sentencing with his counsel on July 31, 2013.

{¶ 6} At the sentencing hearing, Sampson's counsel advised the trial court that he, counsel, ha been out of town on July 10, the date set for sentencing, and had arranged for substitute counsel at the sentencin hearing. The morning of July 10th, Sampson's assigned counsel called Sampson to remind him of the sentencin hearing. Based on that conversation, counsel told Sampson that he would try to get the sentencing hearin continued a week so that assigned counsel, not the substitute counsel, could be there.

{¶ 7} According to his counsel, Sampson evidently interpreted the import of this conversation to be that Sampson did not have to go to court on July 10th, and that the sentencing hearing would be continued. Sampson confirmed to the trial court that this had been his

understanding.

{¶ 8}    The trial court then discussed the matter with Sampson, resulting in the following colloquy:

THE COURT: And here is my question, Mr. Sampson.

THE DEFENDANT: Yes, Ms. Gorman [the trial judge].

THE COURT: You were supposed to be here the 10th.

THE DEFENDANT: That's correct.

THE COURT: And your lawyer called you and said he would try and get a one-week continuance.

THE DEFENDANT: That is correct.

THE COURT: And you did not come back on the 17th, nor did you inquire of either his office or my bailiff if you should be here.

THE DEFENDANT: I did inquire.   I inquired here.

THE COURT: On what date?

THE DEFENDANT: The same – the date that the warrant came out.

THE COURT: And what date was that?

THE DEFENDANT: The next day.

THE COURT: And –

THE DEFENDANT: I inquired right with Mr. Swift [assigned counsel], right on his phone, and he text me back.

THE COURT: And what date were you arrested on?

THE DEFENDANT: 23rd.

MR. SWIFT: Your Honor, I have the –

THE COURT: Okay. Between the 11th and the 23rd, did you take any actions to show me that you were being responsible about your case?

THE DEFENDANT: Ma'am, I turned myself into the bails bondsman.

THE COURT: On the 23rd.

THE DEFENDANT: On the 23rd.

THE COURT: After I ordered that the bond be forfeited and he was looking for you.

THE DEFENDANT: I don't know nothing about a bond being forfeited and he was looking for me. I know I turned myself in to the bails bondsman.

THE COURT: On the 23rd.

THE DEFENDANT: On the 23rd. That was on a Tuesday.

THE COURT: Okay. Anything else you have to say?

THE DEFENDANT: No, ma'am.

MR. SWIFT: Well, Your Honor, I'll say there was a stipulated sentence in this matter, and I would request that the Court adhere to our previous agreement due to the mix up.

THE COURT: Okay. The Court notes that there was an agreed 18-month prison term, assuming that the Defendant showed up for his appointments, showed up on the 10th. And just so it's clear, he was given quite a bit of time. The first referral date was on May 1st. He did not show up for that referral because he was re-referred on June 5th with the disposition date being July 10th.

The Defendant may have been confused about the 10th. However, he took no steps whatsoever to verify what he should have done, when he should have come back, did not show up

for the next docket, which was the 17th, and, in fact, either turned himself into the bail bondsman or did something over two weeks after the date he was supposed to be here. And therefore, I believe the 18-month sentence, while the plea stands, the 18-month sentence doesn't, looking at this, I find the Defendant has four prior misdemeanors. This is his fourth felony for theft, misuse of a credit card, identity theft. This is the second identity theft case that the Defendant has. And, considering the purpose and principles of sentencing and the Ohio Revised Code § 2929.11, and the seriousness of [sic] recidivism factors in the Ohio Revised Code § 2929.12, you are sentenced to the Ohio Department of Rehabilitation and Corrections for 24 months, credit all time served, which I will get from the bailiff shortly.

{¶ 9}     From his conviction and sentence, Sampson appeals.

## II.   The Trial Court Did Not Err in Imposing a 24-month Sentence

{¶ 10}     Sampson's First Assignment of Error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ABIDE BY THE ORIGINAL SENTENCING AGREEMENT WHEN APPELLANT DID NOT VIOLATE THE COURT'S INSTRUCTIONS BEFORE SENTENCING.

{¶ 11}     The trial court expressly conditioned its agreement to impose an eighteen-month sentence upon Sampson's "being here when you're supposed to be here," and made it clear to Sampson that if he failed to appear, his guilty plea would remain intact, but the trial court's agreement to impose an eighteen-month sentence would no longer be in effect. Sampson failed to appear for the sentencing hearing.

{¶ 12}     We agree with the trial court that Sampson cannot escape responsibility for his

failure to appear. Although, as the trial court indicated, Sampson may reasonably have believed that he was not required to appear on July 10th, as a result of his conversation with his lawyer concerning the effort to have that date continued a week, he made no effort to determine whether he was required to appear on July 17th, the date to which the sentencing hearing was to be continued, until after that date, when he discovered that a bail bondsman was looking for him. We agree with the trial court that Sampson's failure to have appeared for sentencing on July 17th was chargeable to him, so that the condition of his "being here when you're supposed to be here" had failed. Therefore, the trial court was free to impose a sentence in excess of eighteen months. In its remarks, the trial court indicated that it was not being vindictive, but was merely imposing the sentence it had originally been inclined to impose had it not been for the sentencing agreement – 24 months.

{¶ 13} Sampson's First Assignment of Error is overruled.

### III. The Record Does Not Support a Claim of Ineffective Assistance of Counsel

{¶ 14} Sampson's Second Assignment of Error is as follows:

APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 15} In support of this assignment of error, Sampson argues: "Appellant simply followed the instructions of his attorney. And that landed him another six (6) months in CRC." We find no support for this in the record. Specifically, we find nothing in the record to indicate that trial counsel instructed Sampson that he had no duty to appear for the July 17th sentencing hearing, and no duty to inquire concerning any possible continuance of that hearing. To the contrary, Sampson took it upon himself to assume that the motion to continue his July 10th sentencing hearing a week

would be granted, and then made no effort to determine whether the continued sentencing hearing was going to go forward on July 17th. There is nothing in the record to indicate that he was following the instructions of counsel in either regard.

{¶ 16} Sampson also argues that his trial counsel was ineffective for having failed to object to the increase in his sentence in violation of the originally agreed upon sentence. In our view, the record affirmatively belies this contention. The last thing trial counsel said before sentence was pronounced was: "Well, Your Honor, I'll say there was a stipulated sentence in this matter, and I would request that the Court adhere to our previous agreement due to the mix up." This clearly raised the issue of the agreed sentence, and preserved it for appellate review.

{¶ 17} We conclude that the record does not support Sampson's Second Assignment of Error. Therefore, it is overruled.

## IV.  Conclusion

{¶ 18} Both of Sampson's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.


DONOVAN, J., dissenting:

{¶ 19} I disagree. Sampson's attorney characterized his client's non-appearance on July

10 as a "mix-up." Furthermore, Sampson's counsel, Mr. Swift,[1] indicated to the court that he advised his client he "would attempt to get a continuance." No motion for continuance was, in fact, filed by Mr. Swift, who was out of town on the July 10 scheduled disposition date. Furthermore, without the record of what transpired on July 10, when the warrant was issued, we are faced with uncertainty as to whether substitute counsel, Mr. Keller, fulfilled Mr. Swift's representation to Sampson that a continuance would be requested.

{¶ 20} In general, we review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*. In my view, it is evident counsel breached his duty of loyalty to his client and failed to follow through in a professional fashion, not only to request a continuance he assured his client he would seek, but also neglected to do anything thereafter to assure Sampson's timely surrender.

{¶ 21} In imposing an additional six months in prison, the trial court stated "The defendant

---

[1]On November 16, 2014, counsel's license to practice law was suspended by the Ohio Supreme Court for two years with one year stayed on conditions. Among the stipulated violations were: Prof. Cond. R. 4.1(a) [false statement of material fact or law to a third person]; Prof. Cond. R. 8.4(c) [conduct involving dishonesty, fraud, deceit, or misrepresentation]; Prof. Cond. R. 8.4(d) [conduct that is prejudicial to the administration of justice]; and Prof. Cond. R.8.4(h) [any other conduct that adversely reflects on the lawyer's fitness to practice law].

may have been confused about the 10th. However, he took no steps whatsoever to verify what he should have done, when he should come back, did not show up for the next docket, which was the 17th, and, in fact, either turned himself into the bail bondsman. . .”

{¶ 22} In my view, it is incorrect to charge a represented defendant with knowledge of all scheduled future docket dates. Nothing in the record suggests Mr. Swift advised Sampson he must be there on the 10th or to surrender on the 17th. In fact, the trial court ignored Sampson's statement he made inquiries (without a finding his assertion defied credulity) about a new appearance date:

> THE DEFENDANT: I did inquire. I inquired here.
>
> THE COURT: On what date?
>
> THE DEFENDANT: The same - - the date that the warrant came out.
>
> THE COURT: And what date was that?
>
> THE DEFENDANT: The next day.
>
> THE COURT: And - -
>
> THE DEFENDANT: I inquired right with Mr. Swift, right on his
>
> phone, and he text me back.

{¶ 23} At a minimum, when Sampson suggested Mr. Swift texted him back on July 11, the court should have asked about the content of counsel's texted response and if it was available for review by the court.

{¶ 24} When a portion or majority of the blame rests at the feet of defense counsel and the defendant turns himself in, less than two weeks later, I'd conclude he should receive the benefit of the doubt and not be penalized with an additional six months in prison which came about primarily due to the ineffective assistance of counsel.

**{¶ 25}** I would reverse and remand for resentencing.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Tiffany C. Allen
Brock Schoenlein
Hon. Barbara P. Gorman